## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

MARY RUZIKA,                              )          CASE NO. 8:05CV258
                                          )
        Plaintiff,                        )
                                          )
    vs.                                   )          MEMORANDUM
                                          )          AND ORDER
JO ANNE B. BARNHART,                      )
COMMISSIONER of the SOCIAL                )
SECURITY ADMINISTRATION,                  )
                                          )
        Defendant.                        )

This matter comes before the Court on the denial, initially and on reconsideration,

of Plaintiff Mary Ruzicka's[1] disability insurance ("disability") benefits under the Social

Security Act ("Act"), 42 U.S.C. §§ 401 *et seq.*, and supplemental security income ("SSI")

benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.*  The Court has considered

the record and the parties' briefs.

### PROCEDURAL BACKGROUND

The Plaintiff, Mary Ruzicka, filed her initial applications for Disability and SSI

benefits on July 30, 2001 (protective filing date).  (Tr. 20, 64-66, 408-11).  The claims were

denied initially (Tr. 38-41, 413-16) and on reconsideration (Tr. 45-49, 417-21).   An

administrative hearing was held before Administrative Law Judge Jan E. Dutton ("ALJ") on

July 8, 2003.  (Tr. 440-82).  On September 26, 2003, the ALJ issued a decision finding that

Ruzicka was not "disabled" within the meaning of the Act and therefore not eligible for

either disability or SSI benefits.  (Tr. 20-31).  On April 8, 2005, the Appeals Council of the

---

[1] The Court notes that the Plaintiff is identified as Mary Ruzika in the caption and in some of the parties' filings, including the Complaint.  However, based on the record before the Court, it appears that the Plaintiff's correct surname is Ruzicka.  Therefore, the Court will refer to the Plaintiff as "Ruzicka" throughout this Memorandum and Order.

Social Security Administration denied Ruzicka's request for review.  (Tr. 8-11).  Ruzicka now seeks judicial review of the ALJ's determination as the final decision of the Defendant, Jo Anne B. Barnhart, the Commissioner of the Social Security Administration ("SSA"). (Filing No. 1).

Ruzicka claims that the ALJ decision was incorrect because the ALJ failed to: 1) properly assess Ruzicka's residual functional capacity ("RFC"); 2) pose a hypothetical question to the vocational expert that included all of Ruzicka's limitations; 3) apply Medical-Vocational Guideline 201.12 or 14; and 4) follow *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), when evaluating Ruzicka's credibility.  (Filing No. 12 ("Ruzicka Brief") at 2).

Upon careful review of the record, the parties' briefs and the law, the Court concludes that the ALJ's decision denying benefits is supported by substantial evidence on the record as a whole.  Therefore, the Court affirms the Commissioner's decision.

## FACTUAL BACKGROUND

Ruzicka is now fifty-six years old.  (Tr. 21, 64).  She has a high school education. (Tr. 21).  Ruzicka's most recent occupational experiences include prep cook, telephone operator, telephone order clerk, and dry cleaner helper.  (*Id.*).  Since March 13, 2000, Ruzicka has not engaged in any substantial gainful employment.  (*Id.*).  She alleges disability due to rheumatoid arthritis.  (Tr. 20, 83).

### *Ruzicka's Testimony*

At the hearing, Ruzicka testified that her work experience included dry cleaning, telemarketing, telephone operating, production, and prep cook work.  (Tr. 448-453). Ruzicka last worked on March 13, 2000, as a prep cook at Nebraska Heath Systems.  (Tr.

2

453).  She quit after approximately a year due to pain in her hands and knees.  (*Id.*).

Ruzicka drew unemployment until June 2001, and she testified that she applied for

telemarketing and janitorial work during that time but did not get any interviews or offers.

(Tr. 454).  She receives some past-due child support.  (Tr. 455).

Ruzicka is divorced and has three grown children.  (Tr. 447).  She lives alone.  (*Id.*).

Ruzicka has received four DWIs.  (Tr. 455-56).  Her driver's license has been suspended

in the past, and currently she does not have a license because she did not renew it.  (Tr.

456).  She said her lack of a driver's license has nothing to do with why she quit working.

(Tr. 457).  She claims that her drinking patterns do not interfere with her ability to hold a

job.  (Tr. 458).  Ruzicka smokes cigarettes and acknowledges this affects her asthma.  (Tr.

472).

Ruzicka testified that she applied for disability because of the pain in her knees and

back.  (Tr. 458).  She said that she cannot have a job that requires her to sit because of

the pain in her knees.  (*Id.*).  She said she would not be able to have another telemarketing

job because her fingers and hands hurt.  (Tr. 458-59).  Ruzicka also claims she cannot

type quickly enough to pass the telemarketing typing tests.  (Tr. 459).  She takes

medication to help with the pain; however, it only helps to a certain point and she

experiences side effects.  (*Id.*).

At the time of the hearing, Ruzicka was 5'9" and weighed 230 pounds.  Her doctor

has recommended that she lose weight to help with her arthritis symptoms.  (Tr. 460).  She

has tried to lose weight but claims it has not improved her arthritis symptoms.  (Tr. 461).

She says she experiences pain in her knee, leg, and thumbs every day.  (*Id.*).  She claims

walking, sitting, lifting and daily chores make the pain worse.  (Tr. 462).  To improve the

3

pain, she either takes pain medication or lies down.  (Tr. 463).  Her medications cause the following side effects: dizziness, stomach problems and diarrhea.  (*Id.*).  She also experiences difficulty sleeping and incontinence.  (*Id.*).  She is able to do some chores, and her daughter helps her with laundry.  (Tr. 468).  During the day, she watches television, plays cards, does housework, and cares for her pet birds.  (Tr. 47).

***Vocational Expert's Testimony***

Testimony was also heard from a vocational expert ("VE"), Patricia Reilly, under contract with the Social Security Administration ("SSA"). (Tr. 20, 475-81).  The VE testified that, assuming Ruzicka could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; stand or walk for six hours in an eight-hour day or sit for six hours in an eight-hour day; occasionally do postural activities such as climbing, crawling, stooping, kneeling, crouching, and bending; avoid concentrated exposure to fumes, odors, dust, gases, cold, humidity, and vibrations; and avoid working on her knees, then Ruzicka could return to telephone order clerk and telephone operator work.  (Tr. 477-78).  Assuming these same limitations, the VE testified that Ruzicka could not return to prep cook or dry cleaner helper work because they require medium physical demands.  (Tr. 478).  The VE testified that there are approximately 744 telephone order clerk positions in a sedentary capacity and 366 in a light capacity in Nebraska.  (*Id.*).  There are approximately 107,032 telephone order clerk positions in a sedentary capacity and 52,717 in a light capacity nationwide.  (*Id*).  The VE stated that there were approximately 884 long-distance operator positions in a sedentary capacity and 295 in a light capacity in Nebraska.  (*Id.*).  Nationwide there are 71,586 sedentary and 23,862 light long-distance operator positions.  (*Id.*).

4

Assuming Ruzicka could not be on her feet more than two hours in an eight-hour day, could sit for six hours, could not lift over ten pounds, and the remaining elements of the hypothetical remained the same, the VE opined that Ruzicka could still do telephone order clerk and telephone operator work at the sedentary level. (*Id.*).  Furthermore, assuming Ruzicka could use her hands on a frequent, but not constant, basis, the VE testified that Ruzicka could still perform these jobs. (Tr. 479).  However, the VE stated that if Ruzicka's testimony was credible and she could only type 15 words per minute, her ability to hold these positions would be limited. (*Id.*).  The VE testified that it "seemed strange" that Ruzicka could not pass a typing test after holding various telemarketing positions in the past. (*Id.*).  Furthermore, the VE testified that not all telemarketing positions require typing tests. (Tr. 480).

The VE testified that Ruzicka's naps during the day would make it difficult for her to work full-time. (Tr. 480).  Additionally, Ruzicka's limitations related to sitting and standing would require that she have a sit/stand option. (*Id.*).  The VE stated that many employers in Omaha allow telephone marketers the leniency to sit, stand, and move about within their workstations. (*Id.*).  However, the VE testified that Ruzicka seemed overwhelmed by her limitations and probably could not do the work. (*Id.*).  The VE testified that if Ruzicka's testimony was credible, she would not be able to do any work. (Tr. 481).

**Documentary Evidence Before the ALJ**

In addition to oral testimony, the ALJ considered medical evidence.  Prior to her alleged onset date of March 13, 2000, Ruzicka was treated for low back pain and arthritis.

(Tr. 175-76, 179-80).  She also had an epigastric hernia repaired in September 1999.  (Tr. 183).

On June 13, 2000, Michael Schooff, M.D., performed a consultative examination of Ruzicka.  (Tr. 192-95).  Ruzicka reported pain in her low back, knees, shoulders, elbows, hands, and feet.  (Tr. 192).  She stated that she could not lift more than 20 pounds and had difficulty bending over and squatting.  (Tr. 193).  Dr. Schooff noted that Ruzicka had good grip strength for a short time, but developed joint pain after a longer period.  (Tr. 194).  Ruzicka had minimal tenderness in her paraspinal muscles and straight leg raises were negative.  (*Id.*).  Dr. Schooff noted a full range of motion in Ruzicka's knees.  (*Id.*).  He noted that Ruzicka had some mild limitations in her activities due to poor flexibility and overall back hygiene.  (Tr. 195).

Dr. Schooff opined that Ruzicka's fine hand dexterity and ability to perform tasks requiring prolonged strength with her hands were limited.  (*Id.*).  He noted there may be arthritic changes in Ruzicka's knees as well.  (*Id.*).  Dr. Schooff opined that Ruzicka was fit for employment as long as it did not require heavy lifting or significant use of hand grip.  (*Id.*).

Ruzicka went to Douglas County Hospital on July 25, 2000, and complained of rheumatoid arthritis, knees popping, and low back ache.  (Tr. 205).  She was diagnosed with high blood pressure, joint pains, and low back pain.  (*Id.*).  X-rays of her lumbar spine, performed on July 26, 2000, showed normal lumbar spine and post surgical changes in the pelvis.  (Tr. 219).  X-rays of her knees showed mild to moderate osteoarthritis, loose bodies, and no evidence of rheumatoid arthritis.  (*Id.*).

6

Ruzicka went to the Douglas County Health Clinic on August 15, 2000, for follow-up of her arthritis and high blood pressure. (Tr. 323). She was diagnosed with hypertension and headaches secondary to hypertension. (*Id.*). Ruzicka returned on August 29, 2000, September 19, 2000, and October 4, 2000, and had diagnoses of hypertension and arthritis. (Tr. 323-24).

On October 5, 2000, Ruzicka went to St. Joseph Hospital and was diagnosed with vertigo and an upper respiratory infection. (Tr. 228). On November 21, 2000, Ruzicka went to the Charles Drew Health Center and complained of knees popping and catching and a numb patch on her thigh. (Tr. 245). She was diagnosed with bursitis and osteoarthritis. (Tr. 246). Ruzicka returned to the hospital on February 19, 2001, and was diagnosed with urticaria. (Tr. 239). Ruzicka was treated for hypertension on May 21, 2001, and again on June 11, 2001. (Tr. 251, 253).

Jonathan Spencer, M.D., performed a consultative examination of Ruzicka on September 25, 2001. (Tr. 258-65). Ruzicka complained of pain in her joints and cramps in her hands, feet, and legs. (Tr. 258). Dr. Spencer noted that Ruzicka had no tenderness, spasm, or guarding of the back. (Tr. 259). Ruzicka had equal hand grasps and normal muscle strength in her extremities. (Tr. 260). Muscle strength was slightly decreased in her right shoulder. (*Id.*). Dr. Spencer noted that Ruzicka had a normal gait and station and was able to walk on her heels and toes. (*Id.*). Ruzicka was able to sit for 10 to 15 minutes and move around the examining room without difficulty. (Tr. 262). Dr. Spencer's impression was hypertension, hip pain likely secondary to trochanteric bursitis, and knee pain likely due to degenerative joint disease. (Tr. 260).

7

Ruzicka returned to the Douglas County Health Clinic on September 27, 2001, and was treated for osteoarthritis, hypertension, and depression.  (Tr. 214).  She returned to the clinic on October 11, 2001, October 25, 2001, November 8, 2001, and November 29, 2001.  (Tr. 214-16).  During those visits she received continuing treatment for osteo-arthritis, depression, and hypertension.  (*Id.*).  She also received treatment for gastroesophageal reflux disease ("GERD") and complained of right shoulder pain.  (Tr. 215).  Right shoulder x-rays performed on October 26, 2001, were normal.  (Tr. 224).  Knee x-rays performed on November 29, 2001, showed moderately severe osteoarthritis and a loose body in the left knee.  (Tr. 225).

On January 16, 2002, Ruzicka returned to the Douglas County Health Clinic and was diagnosed with bronchitis, hypertension, and obesity.  (Tr. 326).  She returned with similar problems on February 13, 2002, March 13, 2002, March 28, 2002, April 9, 2002, and May 24, 2002.  (Tr. 326-33).  Ruzicka also received treatment for GERD and urinary incontinence.  (Tr. 329).  On March 28, 2002, Dr. Nosrat Massih, M.D., noted that Ruzicka's sedimentation rate was high and recommended rehab, physical therapy, and non-steroidal anti-inflammatory medications.  (Tr. 331).  He also noted that she needed to lose weight for her knee arthritis.  (*Id.*).  An MRI of Ruzicka's right shoulder showed no evidence of a tear and only slight impingement upon the tendon.  (Tr. 345).

Ruzicka attended physical therapy during April 2002.  (Tr. 346-50).  On May 24, 2002, Genene Erickson, A.P.R.N., noted that Ruzicka required a job that was sedentary and that she could not walk or be on her feet frequently.  (Tr. 295).  On July 24, 2002, Dr. Massih noted that Ruzicka was not able to walk or stand for extended periods.  (Tr. 298).

8

On September 13, 2002, Ms. Erickson opined that Ruzicka needed to be off work for two to three months.  (Tr. 301).

Ruzicka saw Peter Cimino, M.D., on February 22, 2002, for knee pain.  (Tr. 314-15). He recommended exercises and weight loss.  (Tr. 315).  Dr. Cimino noted that Ruzicka had generalized laxity, but adequate strength in her right shoulder.  (*Id.*).  He noted that she was developing fibrotic nodules in the palm of her right hand, but that she maintained flexibility.  (Tr. 314).  Dr. Cimino continued to treat Ruzicka's knee pain conservatively with no improvement.  (Tr. 310-13).  On December 16, 2002, Dr. Cimino opined that Ruzicka could not work due to her arthritic knees.  (Tr. 303).  Ruzicka underwent left knee arthroscopy on January 22, 2003.  (Tr. 309).  On January 29, 2003, Dr. Cimino noted that Ruzicka was comfortable with her movements and did not want therapy.  (Tr. 308).

On December 18, 2002, Dr. Massih again noted that Ruzicka could not walk or stand for extended periods.  (Tr. 305).  Ruzicka returned to see Dr. Cimino on February 19, 2003, and reported soreness in her knees when getting out of a chair.  (Tr. 404).  Dr. Cimino noted trace swelling and recommended Ruzicka perform strengthening exercises. (*Id.*).  Ruzicka returned on April 2, 2003, and May 19, 2003, with similar complaints.  (Tr. 402-403).  She attended physical therapy during April and May.  (Tr. 354-357).  On May 19, 2003, Ruzicka also reported some numbness in her left hand.  (Tr. 402).  Dr. Cimino noted a slight bit of atrophy and recommended an EMG.  (*Id.*).  Ruzicka had an EMG on June 9, 2003, which showed features of ulnar neuropathy with no evidence of major denervation.  (Tr. 397).

On June 10, 2003, Ruzicka returned to the Douglas County Health Clinic for following up of her urinary incontinence.  (Tr. 359).  Ruzicka underwent a preoperative

9

evaluation for cystocele repair on July 9, 2003.  (Tr. 389).  Dan Schuller, M.D., reported

that Ruzicka had a mild expiratory wheeze with forced expiration.  (Tr. 390).  He noted that

Ruzicka's case was most consistent with COPD secondary to chronic bronchitis and

emphysema.  (Tr. 391).  Pulmonary function studies showed moderate an obstructive

ventilatory defect with significant improvement after administration of bronchodilator.  (Tr.

395).  Dr. Schuller told Ruzicka that she would benefit greatly from quitting smoking before

her elective surgery.  (*Id.*).

        Dr. Cimino wrote a letter regarding Ruzicka's condition on July 28, 2003.  (Tr. 401).

He reported that Ruzicka had arthritis in both knees with a history of surgery on the left

knee.  (*Id.*).  Dr. Cimino also noted that Ruzicka had a nerve problem in her left arm which

resulted in weakness.  (*Id.*).  Her right hand showed Dupuytren's contracture which he

noted would somewhat limit her mobility.  (*Id.*).  Dr. Cimino opined that Ruzicka was

capable of sedentary type duties with only limited time standing and walking.  ( *Id.*).

## THE ALJ'S DECISION

        The ALJ found Ruzicka was not "disabled" within the meaning of the Social Security

Act.  (Tr. 31).  The ALJ framed the issues as: 1) whether Ruzicka was entitled to disability

and SSI benefits under the Act; and 2) whether Ruzicka was "disabled."  (Tr. 20).

        The ALJ followed the sequential evaluation process set out in 20 C.F.R. §§

404.1520 and 416.920 (2005)[2] to determine whether Ruzicka was disabled, considering:

> Any current work activity, the severity of any medically determinable
> impairment(s), and the individual's residual functional capacity with regard
> to . . . her ability to perform past relevant work or other work that exists in the

---

        [2]Section 404.1520 relates to disability benefits, and identical § 416.920 relates to
SSI benefits.  For simplicity, further references will only be to § 404.1520.

10

regional and national economies.  This latter step requires an assessment of the individual's age, education and past work experience.

(Tr. 21).

Following this analysis, the ALJ found that Ruzicka was not disabled.  (Tr. 21). Specifically, at step one the ALJ found that Ruzicka has not performed any substantial gainful work activity since March 13, 2000.  (Tr. 21, 30).  At step two, the ALJ found Ruzicka's osteoarthritis of the knees, obesity, "features of left ulnar neuropathy," and asthma were considered severe within the meaning of the Act's regulations.  (Tr. 24, 30). At step three, the ALJ found Ruzicka's medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4., known as the "listings."  (Tr. 24-25, 30).  At step four, the ALJ determined Ruzicka is able to perform her past relevant work as telephone order clerk and telephone operator. (Tr. 30).

The ALJ noted that Ruzicka's testimony, which attempted to establish total disability, was not entirely credible according to the criteria set forth under 20 C.F.R §§ 404.1529 and 416.929, Social Security Ruling 96-7p, and *Polaski v. Hector*, 739 F.2d 1320 (8th Cir. 1984). (Tr. 30).  The ALJ found Ruzicka was not disabled, was not entitled to a period of disability or the payment of disability insurance benefits, and was not eligible for payment of supplemental security.  (Tr. 31).

## STANDARD OF REVIEW

In reviewing a decision to deny disability benefits, a district court does not reweigh evidence or the credibility of witnesses or revisit issues *de novo.  Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Eichelberger v. Barnhart,* 390 F.3d 584, 589 (8th Cir. 2004).

11

Rather, the district court's role under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and, if so, to affirming that decision. *Harris v. Shalala*, 45 F.3d 1190, 1193 (8th Cir. 1995).

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Holmstrom v. Massanari,* 270 F.3d 715, 720 (8th Cir. 2001). The Court must consider evidence that both detracts from, as well as supports, the Commissioner's decision. *Id.* As long as substantial evidence supports the Commissioner's decision, that decision may not be reversed merely because substantial evidence would also support a different conclusion or because a district court would decide the case differently. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000).

## DISCUSSION

### *"Disability" Defined*

An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be of such severity that the claimant is "not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). If the claimant argues that she has multiple impairments, the Act requires the Commissioner to "consider the combined effect of all of the individual's impairments

12

without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B).

### Sequential Evaluation

In determining disability, the Act follows a sequential evaluation process. *See* 20 C.F.R. § 416.920. In engaging in the five-step process, the ALJ considers whether: 1) the claimant is gainfully employed; 2) the claimant has a severe impairment; 3) the impairment meets the criteria of the "listings"; 4) the impairment prevents the claimant from performing past relevant work; and 5) the impairment necessarily prevents the claimant from doing any other work. *Id.* § 416.920 (a)(4)(I)-(v). If a claimant cannot meet the criteria at any step in the evaluation, the process ends and the determination is made. *Id.*

In this case, the ALJ completed the evaluation process at step four, concluding: 1) Ruzicka has not performed any substantial gainful work activity since March 13, 2000; 2) Ruzicka's osteoarthritis of the knees, obesity, "features of left ulnar neuropathy," and asthma were considered severe within the meaning of the Act's regulations; 3) Ruzicka's medically determinable impairments do not meet or medically equal one of the "listings;" and 4) Ruzicka has the RFC to perform her past relevant work as a telephone order clerk or telephone operator, and such jobs exist in significant numbers in the national economy. (Tr. 30).

### Residual Functional Capacity

Ruzicka claims the ALJ erred in the assessment of Ruzicka's residual functional capacity by failing to consider the bilateral hand limitations documented by the medical evidence. (Filing No. 12 at 10). Residual functional capacity ("RFC") is defined as what

13

Ruzicka "can still do despite . . . limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).  RFC

is an assessment based on all "relevant evidence," *id.*, including a claimant's description

of limitations; observations by treating or examining physicians or psychologists, family,

and friends; medical records; and the claimant's own description of his limitations.  *Id.* §§

404.1545(a)-(c), 416.945(a)-(c).

The ALJ must determine RFC based on all of the relevant evidence, including the

medical records, observations of treating physicians and others, and the claimant's own

description of her limitations.  *McKinney v. Apfel,* 228 F.3d 860, 863-64 (8th Cir. 2000).

Before determining RFC, an ALJ first must evaluate the claimant's credibility.  In evaluating

subjective complaints, the ALJ must consider, in addition to objective medical evidence,

any other evidence relating to: a claimant's daily activities; duration, frequency and intensity

of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and

functional restrictions.  *See Polaski,* 739 F.2d at 1322; *see also* § 404.1529.  Subjective

complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski,* 739 F.2d at 1322.  A lack of work history may indicate a lack of motivation to work

rather than a lack of ability.  *See Woolf v. Shalala,* 3 F.3d 1210, 1214 (8th Cir.1993) (stating

that a claimant's credibility is diminished by a poor work history).  The credibility of a

claimant's subjective testimony is primarily for the ALJ, not a reviewing court, to decide.

*Pearsall v. Massanari,* 274 F.3d 1211, 1218 (8th Cir. 2001).

In this case, the ALJ set out the language describing the appropriate standard under

*Polaski* and §§ 404.1529 and 416.929.  (Tr. 25-26.)  The ALJ summarized Ruzicka's

testimony and described her daily activities according to the testimony and documentary

evidence. (Tr. 26-28) The ALJ found Ruzicka's testimony relating to her alleged inability to work partly credible. (Tr. 29). The ALJ noted that the objective medical evidence did not fully support Ruzicka's alleged severity of symptoms. (Tr. 28).

The ALJ specifically considered, in addition to Ruzicka's testimony, documentary evidence including reports of treating and consultative physicians, a residual functional capacity assessment, and the testimony of the VE. The VE opined that Ruzicka had the RFC to perform her past relevant work as a telephone operator or telephone order clerk, and that these jobs exist in significant numbers in Nebraska and the national economy. (Tr. 29).[3]

The ALJ concluded "[Ruzicka] possesses the residual functional capacity to perform her past relevant work. . . ." (Tr. 30). In reaching this conclusion, the ALJ considered Ruzicka's alleged hand impairments, noting that Ruzicka "should not use her hands on a constant basis. . . ." (Tr. 29). The Court finds the ALJ properly limited the RFC determination to the impairments the ALJ found to be credible and fully developed the record. *See McGeorge v. Barnhart,* 321 F.3d 766, 769 (8th Cir. 2003). The ALJ's RFC determination is supported by substantial evidence on the record as a whole.

***Question Posed to Vocational Expert***

_____

[3]Ruzicka claims the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT") because the DOT lists telephone operator as light work, rather than sedentary. (Filing No. 12 at 15-17). However, the DOT includes other telephone operator positions that are classified as sedentary work, and the position of telephone order clerk is classified as sedentary. *See* U.S. Dep't of Labor, Dictionary of Occupational Titles, 249.362-022, 249.362-026 (4th ed. 1991). Therefore, the Court finds the VE's testimony did not conflict with the DOT.

Ruzicka claims the question the ALJ posed to the VE did not contain all of Ruzicka's limitations.  (Filing No. 12 at 15).  A vocational expert's hypothetical questions are proper if they sufficiently set out all of the impairments accepted by the ALJ as true, and if the questions likewise exclude impairments that the ALJ has reasonably discredited. *Pearsall,* 274 F.3d at 1220.  Examining the hypothetical posed to the VE in this case, the question properly included the impairments that the ALJ found to be substantially supported by the record as a whole.

Ruzicka also claims the ALJ erred by not asking the VE how many positions would be eliminated if Ruzicka could not pass a typing test. (Filing No. 12 at 16).  The VE testified that some, but not all, telephone order clerk and telephone operator positions would be eliminated if Ruzicka could not pass a typing test.  (Tr. 480).  This argument is without merit because 42 U.S.C. § 423(d)(2)(A) does not require a particular job to exist in significant numbers in the national economy in order to constitute past relevant work. *Rater v. Chater*, 73 F.3d 796, 799 (8th Cir. 1996) (citing Social Security Ruling 82-61).

### *Medical-Vocational Guidelines*

Ruzicka claims the ALJ erred in applying Medical-Vocational Guidelines ("Grids") 201.12 or 14.  This argument is without merit because the Grids are applicable "only at the stage of the analysis at which claimant has satisfied his burden of demonstrating that his impairment prevents his performance of his past relevant work and the burden then shifts to the Secretary to show that the claimant retains the residual functional capacity to perform other work." *Walker v. Shalala*, 993 F.2d 630, 632 (8th Cir. 1993).  In this case, the ALJ determined Ruzicka was able to perform her past relevant work as a telephone operator or telephone order clerk; therefore, the Grids were not applicable.

16

*Pain Analysis*

Ruzicka argues that the ALJ did not properly apply the correct standard in evaluating Ruzicka's subjective complaints of pain.  The ALJ found that Ruzicka's testimony was not entirely credible in light of the criteria set forth in 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 96-7p.  (Tr. 25-29).  The credibility of Ruzicka's testimony in its entirety is crucial because, in determining the fourth and fifth factors relating to a claimant's residual functional capacity to perform past relevant work and a range of work activities in spite of his impairments, the ALJ must evaluate the credibility of a claimant's testimony regarding subjective pain complaints.  The underlying issue is the severity of the pain. *Black v. Apfel,* 143 F.3d 383, 386-87 (8th Cir. 1998). The ALJ is allowed to determine the "authenticity of a claimant's subjective pain complaints." *Ramirez v. Barnhart,* 292 F.3d 576, 582 (8th Cir. 2002) (citing *Troupe v. Barnhart,* 32 Fed. Appx. 783, 784 (8th Cir. 2002); *Clark v. Shalala,* 28 F.3d 828, 830-31 (8th Cir. 1994)).  An "'ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole.'" *Haley v. Massanari,* 258 F.3d 742, 748 (8th Cir. 2001) (stating the issue was whether the record as a whole reflected inconsistencies that discredited the plaintiff's complaints of pain) (quoting *Gray v. Apfel,* 192 F.3d 799, 803 (8th Cir.1999)).

Also, an ALJ may resolve conflicts among various treating and examining physicians, assigning weight to the opinions as appropriate. *Pearsall v. Massanari,* 274 F.3d 1211, 1219 (8th Cir. 2001).

The *Polaski* standard is the guide for credibility determinations:

> While the claimant has the burden of proving that the disability results
> from a medically determinable physical or mental impairment, direct medical

17

evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.

The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication; and
5. functional restrictions.

The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1986).

Interpreting the *Polaski* standard, §§ 404.1529 and 416.929 discuss the framework for determining the credibility of subjective complaints, e.g., pain.

An ALJ is required to make an "express credibility determination" when discrediting a social security claimant's subjective complaints. *Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). This duty is fulfilled when an ALJ acknowledges the *Polaski* factors, and the ALJ has clearly examined the factors before discounting the claimant's testimony. An ALJ is "not required to discuss methodically each *Polaski* consideration." *Id.* at 972.

The federal regulations provide that the ALJ must consider all symptoms, "including pain, and the extent to which symptoms can reasonably be accepted as consistent with the

18

objective medical evidence," defined as "medical signs and laboratory findings."  20 C.F.R.

§ 416.929.  Medical "signs" are defined as:

> anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, *e.g.*, abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.

20 C.F.R. § 416.928(b).

> "Laboratory findings" are defined as: "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests."

20 C.F.R. § 416.928(c).

Social Security Ruling 96-7p provides that a "strong indication" of the credibility of a claimant's statements is the consistency of the claimant's various statements and the consistency between the statements and the other evidence in the record.  Ruling 96-7p provides that the ALJ must consider such factors as:

> * The degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment.
>
> * The consistency of the individual's own statements. The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such information is in the case record. Especially important are statements made to treating or examining medical sources and to the "other sources" defined in 20 CFR 404.1513(e) and 416.913(e). However, the lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen

19

or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms. Therefore, the adjudicator will need to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects.

* The consistency of the individual's statements with other information in the case record, including reports and observations by other persons concerning the individual's daily activities, behavior, and efforts to work. This includes any observations recorded by SSA employees in interviews and observations recorded by the adjudicator in administrative proceedings.

SSR 96-7p, 1996 WL 374186 (S.S.A.) at *5 (July 2, 1996). [4]

Deference is generally granted to an ALJ's determination regarding the credibility of a claimant's testimony and, in particular, subjective complaints of pain. *Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001) (stating that if an ALJ provides a "good reason" for discrediting claimant's credibility, deference is given to the ALJ's opinion, although every factor may not have been discussed).

In Ruzicka's case, the record illustrates that the ALJ performed a thorough *Polaski* analysis in determining the credibility of Ruzicka's subjective pain complaints. The ALJ summarized in detail Ruzicka's complaints relating to the pain in her knees, hands and hips. (Tr. 26-27). The ALJ considered Ruzicka's daily activities, which include: watching television; playing cards; dishwashing; and caring for her pet birds. (Tr. 27, 28). The ALJ gave significant weight to the opinions of Drs. Massih and Cimino, who determined that based on Ruzika's functional restrictions, she is capable of sedentary work only. (Tr. 28).

---

[4]Social Security Ruling 96-7p is entitled: "Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements.

The ALJ noted that Ruzicka continues to smoke, which is inconsistent with Dr. Schuller's advice.

The ALJ also considered the fact that Ruzicka received unemployment compensation until June 2001. (Tr. 28). The ALJ noted that "[i]n order to receive this payment [Ruzicka] held herself up as ready, willing, and able to work, and in fact applied for several jobs." (*Id.*). The ALJ determined this was not consistent with Ruzicka's claims of total disability and did not reflect favorably on Ruzicka's credibility. (*Id.*).

In summary, the ALJ thoroughly considered Ruzicka's subjective pain complaints, the reports of her physicians, Ruzicka's daughter's testimony, and Ruzicka's own statements. The ALJ correctly engaged in the *Polaski* analysis. The ALJ set out the standards stated in §§ 404.1529 and 416.929, and the ALJ acknowledged the *Polaski* standard as well as applicable regulations and SSR 96-7p. (Tr. 25-26). The ALJ's conclusion that Ruzicka's pain is not severe enough to prevent her from engaging in some of her past relevant work was well-founded, and followed an appropriate express credibility determination regarding Ruzicka's assertion of subjective complaints.

Therefore, the ALJ appropriately determined that Ruzicka's testimony was not credible with respect to the extent of her symptoms and limitations. The Court finds the ALJ's express credibility determination is substantially supported by the record as a whole.

## CONCLUSION

For the reasons stated in this memorandum, the Court concludes that the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

21

IT IS ORDERED that the decision of the Commissioner is affirmed, the appeal is denied, and judgment in favor of the Defendant will be entered in a separate document.

DATED this 6th day of July, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge